**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

LIBERTY MUTUAL INSURANCE COMPANY,

Plaintiff,

v.

COFFMAN SPECIALTIES, INC., *et al.*,

Defendants.

Case No. 25-cv-0619-BAS-JLB

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF No. 39)**

Pending before the Court is a motion for partial summary judgment on Counts 1 (Breach of Contract) and 3 (Specific Performance) ("Motion") submitted by Plaintiff Liberty Mutual Insurance Company ("Liberty"). (ECF No. 39.) For the reasons below, the Court **GRANTS IN PART** and **DENIES IN PART** Liberty's Motion. (ECF No. 39.)

## I. BACKGROUND

Liberty is an insurance company that, as relevant here, issues surety bonds for construction projects. Defendant Coffman Specialties, Inc. ("Coffman Inc.") is a general engineering construction contractor based in San Diego that primarily contracts with the California Department of Transportation and other public entities to perform work for highways and airfield runways. (ECF No. 54-2 ¶ 3.) Since Coffman Inc. primarily works

on public projects, government contracts routinely require Coffman Inc. to provide performance and payment bonds—such as those provided by Liberty. (*Id.* ¶¶ 3, 4.)

On June 18, 2008, Defendants Coffman Inc., DT Trucking LLC, James Coffman, Colleen Coffman, and Sky Trek LLC executed the General Agreement of Indemnity ("GAI") in favor of Safeco Insurance Companies for the purpose of indemnifying Safeco from all loss and expenses in connection with bonds issued for principals Coffman Inc. and Sim J. Harris (not a named party in this action). (ECF No. 39-3, Ex. A at 2–4.)

> Sureties under the GAI include any one or combination of the following entities: Safeco Insurance Company of America; General Insurance Company of America; First National Insurance Company of America; Safeco National Insurance Company; American States Insurance Company; American Economy Insurance Company; any person or company joining with any of the aforesaid companies in executing any Bond, executing any Bond at their request or providing reinsurance to them with respect to any Bond and any subsidiaries, successors, and assigns thereof.

(ECF No. 39-3, Ex. A, "Surety" clause.)

Over time, through addenda, the remaining Defendants were added as signatories to the GAI.[1]

On August 10, 2017, at the request of Safeco, an affiliate of Liberty, Liberty issued two bonds to back Coffman Inc.'s obligations as a subcontractor to Connect 202 Partners ("C202") on the Arizona Loop 202 Mountain Freeway project to perform concrete paving ("C202 Paving Project"). Specifically, Liberty issued: (1) a "Performance Bond" guaranteeing Coffman Inc. will complete its concrete paving work under the subcontract; and (2) a "Payment Bond" guaranteeing Coffman Inc. will pay its own subcontractors, laborers, and suppliers—protecting downstream parties from unpaid claims. (ECF Nos.

[1] A series of additional parties were later added through Signature Addenda, each stating it became part of the June 18, 2008 agreement (and identifying Safeco Insurance Company of America as a member of the Liberty Mutual Group): Defendant Scripps Park West, LLC (added on February 25, 2010), Defendants DLTCM, LLC and CTDM, LLC (added on November 15, 2011), Defendants James A. Coffman and Colleen T. Coffman, as trustees for the Coffman Family Trust Dated 9/22/08 (added on April 9, 2013), and Defendant LDTCM, LLC (added on October 23, 2013).

39-1 ¶ 20; 39-19, Ex. J.) The two bonds name C202 as obligee. (*Id.*) On August 17, 2017, one week after Liberty issued the bonds, C202 and Coffman Inc. executed the paving subcontract. (ECF No. 39-1 at 7:21–23 (citing ECF No. 39-3, Ex. G).)

On September 20, 2019, C202 issued a Notice of Default to Coffman Inc. On October 4, 2019, C202 issued a Notice of Termination to Coffman Inc. and submitted a subsequent Performance Bond claim to Liberty on the same day as issuing the Notice of Termination. On July 23, 2020, Coffman Inc. sued C202 in the Superior Court of Arizona—claiming it was owed money for work performed. On October 29, 2020, C202 counterclaimed against Coffman Inc. and Liberty (as surety on the Performance Bond), claiming $7.46 million. Eventually, on July 8, 2025, the Arizona Superior Court issued a post-trial under-advisement ruling in favor of C202—awarding $5,611,713 against Coffman Inc. and noting Liberty's liability. (ECF No. 39-20, Ex. Q at 2772.) C202 applied for an additional $3.85 million in fees, costs, and Rule 68(g) sanctions. (ECF No. 39-20, Ex. R at 2781.)

Meanwhile, prior to the Arizona court's advisement ruling on July 8, 2025 but after C202's counterclaims, Liberty made two written collateral demands to Defendants ($6.5 million in collateral or discharge to Coffman Inc., James Coffman, and Colleen Coffman; and $6.5 million in collateral or discharge to all Defendants). (ECF Nos. 1; 39-2 ¶¶ 36, 37, 39, 41; 39-20, Exs. S, T, U, V.) On June 3, 2025, Liberty made a third demand for collateral "sufficient to cover [Liberty]'s exposure under the Bonds." (ECF Nos. 39-2 ¶ 39; 39-20, Ex. U.) After the Arizona court's ruling but before C202's application for the additional $3.85 million, Liberty made a fourth demand for $6.5 million in collateral on July 10, 2025. (ECF No. 39-2 ¶¶ 41, 42; ECF No. 39-20, Ex. V.)

Liberty initiated the present action against Defendants on March 15, 2025. The present case involves whether Defendants are now required to follow through on that GAI by: (1) covering Liberty's expenses incurred in connection with Defendants' default on a public works construction project and subsequent lawsuit in Arizona state court (per Liberty's breach of contract cause of action, or Count 1); and (2) posting collateral to cover

potential losses currently awarded by Arizona state court but that are on appeal (per Liberty's specific performance cause of action, or Count 3).

On December 5, 2025, Liberty filed the present partial motion for summary judgment against all Defendants on Counts 1 and 3. (ECF No. 39.) On April 17, 2026, Defendants filed their opposition. (ECF No. 54.) On April 24, 2026, Liberty replied. (ECF No. 56.)

On May 13, 2026, Defendants filed a sur-reply stating that Coffman Inc. had applied for a roughly $11.9 million supersedeas bond from Berkshire Hathaway Specialty Insurance to be posted in the Arizona litigation (which would stay enforcement of the Arizona judgment while Coffman Inc. pursues its post-judgment appeal). (ECF No. 60.) The Court held oral argument. (ECF No. 64.)

## II. LEGAL STANDARD

Summary judgment is appropriate on "all or any part" of a claim if there is an absence of a genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248.

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party can present evidence that negates an essential element of the nonmoving party's case or demonstrate that the nonmoving party failed to establish an essential element of the nonmoving party's case on which the nonmoving party bears the burden of proof at trial. *Id.* at 322–23. Once the moving party establishes the absence of genuine issues of material fact, the burden shifts to the nonmoving party to set forth facts showing that a genuine issue of disputed fact remains. *Celotex*, 477 U.S. at 322. The nonmoving party cannot oppose

a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings." *Anderson*, 477 U.S. at 256.

When ruling on a summary judgment motion, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court does not make credibility determinations with respect to evidence offered. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987) (citing *Matsushita*, 475 U.S. at 587). Summary judgment is therefore not appropriate "where contradictory inferences may reasonably be drawn from undisputed evidentiary facts." *Hollingsworth Solderless Terminal Co. v. Turley*, 622 F.2d 1324, 1335 (9th Cir. 1980).

## III. ANALYSIS

### A. Choice of Law

As a threshold matter, the Court finds California law governs the claims at issue. When directly asked by the Court at oral argument, Parties did not object to the application of California law to Counts 1 and 3. (ECF No. 64.) Liberty applies California law to Count 1 in its Complaint and Motion for Summary Judgment (ECF No. 39-1 at 13:12–19:8), and Defendants do not expressly contest such application (ECF No. 54 at 7 n.4). As such, the Court finds that, for purposes of deciding Liberty's Motion, California law governs Liberty's breach of contract claim.

### B. Count 1: Breach of Contract

#### 1. Legal Standard

Under California law, the elements for breach of contract are: (1) the contract; (2) Liberty's performance or excuse for nonperformance; (3) Defendants' breach; and (4) the resulting damages to Liberty. *Pauna v. Zurich Ins. Co.*, No. CV1901365TJHSPX, 2020 WL 11339693, at *1 (C.D. Cal. Feb. 13, 2020) (citing *Hamilton v. Greenwich Investors XXVI, LLC*, 195 Cal. App. 4th 1602, 1614 (2011)). Contract interpretation is a matter of law reserved for the Court. *Cervantes v. W. End 3199 REO LLC*, No. 17-CV-06100-VKD,

2019 WL 2744689, at *9 (N.D. Cal. July 1, 2019) (citing *Morey v. Vannucci*, 64 Cal. App. 4th 904, 911 (1998)).

**2. Defendants' Obligation to Liberty Under GAI**

Liberty moves for summary judgment on Count 1, arguing: (1) Liberty qualifies as a "Surety" under the GAI; and (2) Liberty performed as a "Surety" by issuing the Performance Bond and Payment Bond on the C202 Paving Project to Defendants. (ECF No. 39-1 at 14:1–15:27.)

Liberty claims it is a "Surety" under the GAI. (ECF Nos. 39-1 at 14:6–11; 39-2 ¶ 3.) Relatedly, Liberty cites signed addenda to the GAI stating that Safeco Insurance Company is "a member of Liberty Mutual Group for which Liberty Mutual Surety underwrites surety business, on behalf of Coffman Specialties Inc. . . ." (ECF No. 39-2 ¶¶ 3, 8–11; ECF No. 39-3, Exs. B, C, D, E ("Signature Addenda").)

Given that Safeco Insurance Company is a "Surety" under the GAI, Liberty is also a "Surety" who is entitled to indemnity from Defendants under the GAI because of Liberty's involvement with Safeco in executing the Performance Bond and Payment Bond. (ECF No. 39-3, Ex. A at 1, "Surety" definition includes "[a]ny one or combination of the following: Safeco Insurance Company of America; General Insurance Company of America; First National Insurance Company of America; Safeco National Insurance Company; American States Insurance Company; American Economy Insurance Company; <u>any person or company joining with any of the aforesaid companies in executing any Bond</u> . . . " (emphasis added).) Thus, the GAI is a valid contract binding Liberty and Defendants. *See Pauna*, 2020 WL 11339693, at *1.

Furthermore, Liberty performed its obligations under the GAI by issuing the Performance Bond and Payment Bond. In other words, by issuing the relevant bonds, Liberty triggered Defendants' promises under the GAI (ECF No. 39-1 at 14:6–11 (citing ECF No. 39-3, Ex. A at 1 "In consideration of the execution of any such Bonds for [Coffman Inc.] . . . by Surety, the Undersigned [including Coffman Inc.], jointly and severally, agree . . .")). *See U.S. Ecology, Inc. v. California*, 92 Cal. App. 4th 113, 128

(2001) ("A promise is not enforceable unless consideration was given in exchange for the promise"); *Sonoma Springs Ltd. P'ship v. Fid. & Deposit Co. of Md.*, 409 F. Supp. 3d 946, 952 (D. Nev. 2019) (citing 17 Am. Jur. 2d *Contractors' Bonds* § 1 (2019)) ("A performance bond creates a unique three-party relationship where the surety guarantees that in the event the principal . . . defaults on its obligations in the underlying construction contract, the surety will step in and perform").

As evidence that Liberty has executed bonds on behalf of Safeco, Liberty cites a letter dated February 27, 2009 from Vice-President of Safeco Insurance Company of America Timothy A. Mikolajewski to Executive Vice-President of Liberty Gary R. Gregg, stating:

> Please accept this letter as a request from Safeco Insurance Company of America ('SICA') to Liberty Mutual Insurance Company ('LMIC') for LMIC to execute surety bonds on behalf of SICA as may be needed. Please sign this letter and return the signed letter to me as LMIC's acknowledgement and acceptance of SICA's request.

(ECF No. 39-1 at 8:3–14 (citing ECF No. 39-19) ("2009 Letter").) Subsequent to that letter, on August 10, 2017, Liberty executed the Performance Bond and Payment Bond.

The Court agrees with Liberty's interpretation of the GAI. Thus, the Court finds Liberty has met its initial burden to move for summary judgment on the first two elements of breach of contract.

Defendants argue that triable issues remain as to whether Liberty is a "Surety" to whom Defendants owe a responsibility under the GAI. More specifically, Defendants argue Liberty's cited evidence that Liberty qualifies as a "Surety" under the GAI is inadmissible under the Federal Rules of Evidence. (ECF No. 54 at 4:20–5:3.)

First, Defendants argue the statement in Luis F. Aragon (Assistant Vice President at Liberty Mutual) ("Aragon")'s Declaration ("Aragon Declaration")—"Safeco Insurance is an affiliate of Liberty" (ECF No. 39-2 ¶ 3)—is inadmissible under various Federal Rules of Evidence. (ECF No. 54 at 4:20–5:3.) However, the Court agrees with Liberty and finds the Signature Addenda signed by Defendants provide that signatories' obligations are

"intended to and shall be a part of the Agreement of Indemnity given to Safeco Insurance Company of America." (*See* ECF No. 56 at 4:7–11.) The Signature Addenda also provide that Safeco Insurance Company is "a member of Liberty Mutual Group for which Liberty Mutual Surety underwrites surety business, on behalf of Coffman Specialties Inc." (*See* Signature Addenda.) Thus, the admissibility of the statement in the Aragon Declaration is not necessary to show Liberty has met its initial burden to move for summary judgment on Count 1.

Second, Defendants argue the 2009 Letter (ECF No. 39-19) is inadmissible hearsay under the Federal Rules of Evidence because Aragon lacks personal knowledge (having started working for Liberty in 2013). Thus, Defendants contend, Liberty fails to satisfy the requirements of the business records exception to the hearsay rule, Fed. R. Evid. 803(6). (ECF No. 54 at 5:11–14.) Here, given that Aragon declared under the penalty of perjury that he is "a Custodian of Records of [Liberty]'s files," he is a custodian capable of authenticating the 2009 Letter as a business record (ECF No. 39-2 ¶ 6). *In re Hudson*, 504 B.R. 569, 575 (B.A.P. 9th Cir. 2014) ("Although Reyes <u>declarations</u> establish that they qualify . . . as custodians") (emphasis added). There is no requirement of first-hand knowledge. *See In re Hudson*, 504 B.R. at 575 ("[S]ubsection (6) of FRE 803 does not require the business custodian to certify he or she has first-hand knowledge of the facts set forth in the records being authenticated"); *Diemert v. City of Seattle*, 776 F. Supp. 3d 922, 935 (W.D. Wash. 2025) (citing *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment")). Thus, the Court finds the 2009 Letter is admissible, and Defendants' arguments as to its inadmissibility do not establish triable issues on Count 1.

Even if the 2009 Letter is admissible, Defendants argue the 2009 Letter does not mention the GAI, and thus, does not imply Liberty is a "Surety" under the GAI. (ECF No. 54 at 6:19–22.) Defendants point out that the 2009 Letter states Liberty would issue bonds as "needed." (*Id.*) Defendants argue the bonds were not "needed" under the 2009 Letter

because Liberty testified it did not know whether Liberty informed Coffman that Liberty was issuing the relevant bonds on behalf of Safeco. (ECF No. 54-1, Ex. A at 17:9–14.)

The Court does not find this argument to be convincing. Whether or not the bonds were "needed," Parties do not dispute that Liberty issued the Performance Bond and Payment Bond to back Defendants' subcontract in the C202 Paving Project. Moreover, Defendants do not address Liberty's argument that the Signature Addenda demonstrate that Liberty is affiliated with Safeco Insurance Company under the GAI. (ECF No. 39-3, Exs. B, C, D, E (Safeco Insurance Company is "a member of Liberty Mutual Group for which Liberty Mutual Surety underwrites surety business, on behalf of Coffman Specialties Inc. . . .").)

Thus, the Court finds Defendants failed to raise triable issues regarding whether Liberty qualifies as a "Surety" under the GAI—and consequently, as to the first two elements for breach of contract.

**3. Defendants' Nonpayment Constitutes Breach of GAI**

Liberty cites the GAI's indemnity clause as creating Defendants' contractual obligations to pay a Surety (here, Liberty), upon demand, all of the loss, costs, and expenses of the Surety incurred on behalf of principals (*i.e.*, Coffman Inc.). (ECF No. 39-3, Ex. A, "Indemnity to Surety" clause ¶ 1.)

Liberty claims Defendants breached terms of the GAI requiring Defendants to: (1) indemnify Liberty for damages <u>already</u> incurred as a result of issuing bonds on Coffman Inc.'s behalf; and (2) post collateral in an amount determined by Liberty to be sufficient to cover <u>anticipated</u> exposure (*i.e.*, money Liberty expects it will become liable for but has not yet paid) under such bonds. (ECF No. 39-1 at 14:13–21.)

**i. Indemnity for Actual Loss**

Liberty moves for summary judgment on the basis that Defendants breached their GAI obligations to Liberty by failing to pay indemnity for costs surrounding the Arizona litigation (*i.e.*, attorneys' fees for defending Liberty, consultant fees for investigation of the

C202 Paving Project and defense of bond claims, and travel costs). (ECF No. 39-1 at 14:13–21.)

Under ECF No. 39-3, Ex. A, "Indemnity to Surety" clause ¶ 1, indemnifiable loss is defined as:

> All loss, costs and expenses of whatsoever kind and nature, including court costs, reasonable attorney fees (whether Surety at its sole option elects to employ its own attorney, or permits or requires Undersigned to make arrangements for Surety's legal representation), consultant fees, investigative costs and any other losses, costs or expenses incurred by Surety by reason of having executed any Bond, or <u>incurred by it on account of any Default</u> under this agreement by any of the Undersigned . . .

(ECF No. 39-3, Ex. A, "Indemnity to Surety" clause ¶ 1 (emphasis added).)

Further, under the GAI, a "Contractor shall be deemed to be in default under this agreement in the event it: (1) is declared to be in default by the Obligee of any bond." (ECF No. 39-3, Ex. A, "Default.") Moreover, under the GAI, Coffman Inc. is defined as a "Contractor." (ECF No. 39-3, Ex. A, "Default.")

It is undisputed that C202 issued a Notice of Default to Coffman Inc. in connection with the C202 Paving Project—for which Liberty had issued two bonds. (ECF No. 55 at 7 (undisputed fact Nos. 12, 13).) Since Coffman Inc. has been "declared to be in default by the Obligee [i.e., C202] of any bond," Liberty can recover economic loss suffered in the Arizona litigation because that loss was incurred "by reason of [Liberty] having executed" the two bonds backing Coffman Inc.'s work in the C202 Paving Project. (ECF No. 39-3, Ex. A, "Indemnity to Surety," "Default.")

Liberty claims Defendants have failed to fulfill Liberty's requests for the following indemnifiable actual losses in connection with the Arizona litigation "through December 4, 2025": (1) attorneys' fees related to defending Liberty in the Arizona litigation; (2) consultant fees for the investigation of the C202 Paving Project and defense of bond claims; and (3) travel costs. (ECF No. 39-2 ¶¶ 44–45.) Liberty claims its total actual loss is $265,874.22. (ECF No. 39-1 at 14:24.) "[C]ourt costs," "attorney fees," and "consultant fees" are explicitly covered as indemnifiable loss under the GAI. (*See* ECF No. 39-3, Ex.

A, "Indemnity to Surety" clause ¶ 1.) Liberty's travel costs fall within the GAI's indemnity provision, which covers "[a]ll loss, costs and expenses of whatsoever kind and nature . . . incurred by Surety by reason of having executed any Bond," (ECF No. 39-3, Ex. A, "Indemnity to Surety" clause ¶ 1), and Defendants do not argue otherwise. The Court thus finds Liberty met its initial burden that—according to the GAI—Liberty is entitled to indemnification for the attorneys' fees, consultant fees, and travel costs it incurred in connection with the Arizona litigation and related events (*i.e.*, issuing bonds to back the C202 Paving Project).

Defendants do not oppose Liberty's arguments that Defendants failed to pay Liberty. Instead, Defendants oppose Liberty's summary judgment motion on the basis that attorneys' fees associated with the Arizona case are unreasonable under the GAI because Coffman Inc. offered to defend Liberty for free. (ECF No. 54 at 9:3–19 (referencing ECF No. 39-3, Ex. A, "Indemnity to Surety" clause ¶ 1 (defining indemnifiable loss as "[a]ll loss, costs and expenses of whatsoever kind and nature, including court costs, <u>reasonable</u> attorney fees") (emphasis added)).)

However, the GAI also states it is permissible to recover attorneys' fees "whether Surety at its sole option elects to employ its own attorney, <u>or</u> permits or requires Undersigned to make arrangements for Surety's legal representation." (ECF No. 39-3, Ex. A, "Indemnity to Surety" clause ¶ 1.) Thus, the Court finds that Liberty's claimed losses (*i.e.*, attorneys' fees, consultant fees, and travel costs) are recoverable as indemnifiable loss by Liberty under the GAI; and that Liberty had accrued monetary damages as a result of breach of contract. *See N. Wind Constr. Servs., LLC v. Campos EPC, LLC*, No. 4:21-CV-00096-DCN, 2023 WL 196618, at *10 (D. Idaho Jan. 13, 2023) ("[T]o win summary judgment on its breach of contract claim, North Wind needed to show that it had a contract with Campos, that Campos breached that contract, and that the breach caused [it] <u>reasonably certain damages</u>") (emphasis added).

Put differently, the Court finds Liberty is entitled to attorneys' fees, consultant fees, and travel costs under the terms of the GAI; and Defendants breached the GAI by failing to pay.

**ii. Indemnity Amount Recoverable**

Liberty moves for summary judgment that it can recover $265,874.22 for actual monetary loss resulting from the Arizona litigation. (ECF No. 39-1 at 11:4–5; ECF No. 39-2 ¶¶ 44–45; ECF No. 39-20, Exs. W, X.) More specifically, Liberty claims attorneys' fees of $244,280.93 (paying firm Jennings, Strouss & Salmon $99,529.04 and firm Sacks Tierney P.A. $144,751.89) (citing invoices in ECF No. 39-20, Ex. W). Liberty also claims consultant fees of $15,594.49 (citing invoices in ECF No. 39-20, Ex. X). Lastly, Liberty claims an amount of $5,998.80 was accrued in travel costs. (ECF No. 39-2 ¶ 45(c).) The Court considers each category of monetary loss in turn.

**a. Attorneys' Fees**

California courts have approved attorneys' fees arising from actions to enforce an indemnity agreement "where the contractual provision of an indemnity agreement explicitly provides for attorneys' fees arising from the enforcement of the contract itself . . ." *Suretec Ins. Co. v. BRC Constr., Inc.*, 2013 WL 6199021, at *3 (E.D. Cal. Nov. 27, 2013) (alteration in original) (quoting *Int'l Fid. Ins. v. Draeger Constr., Inc.*, 2012 WL 424994, at *4 (N.D. Cal. Feb. 8, 2012)). In such an instance, the fee provision is governed by Cal. Civ. Code § 1717, which provides fees in an action based on contract when the party seeking the fees is the prevailing party and the fees sought are reasonable. *Id.*

However, even where a surety is entitled to attorneys' fees, the Court may limit the recoverable fees to only those fees that are reasonable. *See Travelers Cas. & Sur. Co. of Am. v. Highland P'ship, Inc.*, No. 10CV2503 AJB DHB, 2012 WL 5928139, at *11 (S.D. Cal. Nov. 26, 2012); *Int'l Fid. Ins.*, 2012 WL 424994, at *3 (explaining that Cal. Civ. Code § 1717 establishes the plaintiff may recover attorneys' fees if the request is reasonable); *Safeco Ins. Co. of Am. v. Chiang*, 2007 WL 460844, at *3 (N.D. Cal. Feb. 7, 2007); Cal. Civ. Code § 1717(a) ("Reasonable attorney's fees shall be fixed by the court, and shall be

an element of the costs of suit."); 74 Am. Jur. 2d *Suretyship* § 138 (2023) (explaining that even if a surety is entitled to attorneys' fees, the court may limit the surety's award for appropriate reasons, including limiting to only fees that are reasonable).

Federal courts applying California law have not explicitly applied the same "reasonable" test to the recoverability of other expenses where there is an indemnity agreement specifying those expenses are recoverable as indemnity (*e.g.*, consultant expenses and other expenses in investigating and resolving the claims and prosecuting the action). *See, e.g., Arch Ins. Co. v. M.V.C. Enters., Inc.*, No. 5:21-CV-01876-JDE, 2023 WL 8351567, at *7 (C.D. Cal. Sept. 18, 2023) (awarding the exact amount of consultant fees incurred in litigating the action that the plaintiff requested where the indemnity agreement provided consultant fees are recoverable and the plaintiff demonstrated calculations underlying requested fees).

Additionally, here, under ECF No. 39-3, Ex. A, "Indemnity to Surety" clause ¶ 1, indemnifiable loss in the form of attorneys' fees must be "reasonable" and "incurred . . . on account of any Default under [the GAI] by any of the Undersigned."

The Court finds Liberty has met its initial burden to state that the attorneys' fees requested in connection with Defendants' default leading to the Arizona litigation and with the Arizona litigation itself are reasonable. Liberty's cited invoices demonstrate that Liberty was charged an hourly rate of $200–275 for law firm partners' work and of $125 for paralegals and legal assistants (ECF No. 39-20, Ex. W). *See, e.g., Whittle v. Wells Fargo Bank, N.A.*, No. CVF 10-0229LJOSMS, 2010 WL 1444675, at *4 (E.D. Cal. Apr. 12, 2010) (finding a $250 hourly billing rate reasonable for an eight-year attorney and a $155 hourly billing rate reasonable for a paralegal). Further, Liberty's request of a total amount of $244,280.93 for attorneys' fees and costs for litigation is reasonable considering the length of the Arizona litigation, the complexity of the issues (*i.e.*, complex contract dispute), and the expense of participating in a trial spanning weeks (ECF No. 39-2 ¶ 30). *See, e.g., DeRuyver v. Omni La Costa Resort & Spa, LLC*, No. 3:17-CV-0516-H-AGS, 2020 WL 563551, at *3 (S.D. Cal. Feb. 4, 2020) (requested attorneys' fees were reasonable

because of the "protracted nature of th[e] litigation and the expense of going to trial"); *Alter by & through Alter v. Cnty. of San Diego*, No. 21-CV-01709-BLM, 2023 WL 4166096, at *4 (S.D. Cal. June 22, 2023) (requested attorneys' fees and litigation costs were reasonable because the "case was legally and factually complex and as stated above, involved hundreds of hours of research and litigation.").

Defendants oppose the reasonableness of Liberty's requested attorneys' fees on the grounds that during the Arizona litigation trial, Liberty's attorney did not take any depositions, call or examine any witnesses, file any motions, or produce any evidence. (ECF No. 54 at 14:3–14 (citing ECF No. 54-1, Ex. A).) However, Defendants do not point to any legal support for the proposition that any of Liberty's counsel's actions taken during the trial diminish the reasonableness of the requested attorneys' fees. Indeed, the only case Defendants cite stands for the general proposition that courts should take the reasonableness of requested attorneys' fees into account when determining the award. (ECF No. 54 (citing *Chiang*, 2007 WL 460844, at *3).)

Moreover, it is clear from the record that Liberty's counsel served as monitoring and advisory counsel for Liberty (as Surety), while Coffman Inc.'s counsel (as named counsel in the case) led the litigation efforts on behalf of Parties' shared defense objective in the Arizona litigation. The Aragon Declaration describes Liberty's counsel's activities during the Arizona litigation as: "communications with Liberty's representatives, analysis of the claims asserted by C202, review of project documentation, and coordination with counsel for Coffman." (ECF No. 39-2 ¶ 45(a).) Defendants do not dispute that Liberty's counsel conducted any of these activities.

Thus, the Court finds Defendants fail to raise triable issues and finds that Liberty's request of $244,280.93 in attorneys' fees was reasonable.

**b. Travel Costs**

Liberty does not provide any evidence or method of calculation to support the $5,998.80 in travel costs claimed in Aragon's Declaration. (ECF No. 39-2 ¶ 45(c).) Liberty has therefore failed to meet its initial burden as to the amount of travel costs

recoverable. *See Liang v. Cal-Bay Int'l, Inc.*, No. 06CV1082-WMC, 2010 WL 11684762, at *3 (S.D. Cal. Apr. 16, 2010) (denying plaintiff's motion for summary judgment where plaintiff "has not satisfied his burden with regard to the calculation of the amount of damages he is owed" and thus, plaintiff "has not provided sufficient evidence in support of his calculation of damages").

**c. Consultant Fees**

Next, the Court finds Liberty has met its initial burden to move for consultant-fee damages resulting from the breach of contract—totaling $15,594.49—which is supported by Exhibit X attached to the Aragon Declaration. (ECF No. 39-20, Ex. X.) Defendants do not oppose Liberty's request for consultant fees. Thus, the Court finds Defendants fail to raise triable issues that Liberty is entitled to $15,594.49 in consultant fees.

* * *

In sum, the Court **GRANTS IN PART** and **DENIES IN PART** Liberty's Motion on Count 1. (ECF No. 39.) While the Court **GRANTS** Liberty's Motion that Defendants prima facie breached the GAI, that Liberty is entitled to $244,280.93 in attorneys' fees and $15,594.49 in consultant fees for that breach, and that Liberty is entitled to indemnification for its travel costs, the Court **DENIES** Liberty's Motion as to the exact monetary amount recoverable for those travel costs. (ECF No. 39.)

**C. Count 3: Specific Performance**

**1. Independent Cause of Action**

"[S]pecific performance is not an independent cause of action under California law, but is instead a remedy for breach of contract." *Murj, Inc. v. Rhythm Mgmt. Grp., PLLC*, No. 5:21-CV-00072-EJD, 2021 WL 5507170, at *5 (N.D. Cal. Nov. 24, 2021); *Riese v. Chase Home Fin., LLC*, No. C 11-03297 NJV, 2011 WL 4344590, at *3 (N.D. Cal. Sept. 13, 2011); *Griffin v. Green Tree Servicing, LLC*, 166 F. Supp. 3d 1030, 1055 (C.D. Cal. 2015). However, rather than deny summary judgment on Liberty's request for specific performance, the Court will construe it as part of Liberty's breach of contract claims. *See, e.g., Heinaman v. Fid. & Guar. Life Ins. Co.*, No. 214CV01884RFBGWF, 2016 WL

1367743, at *4 (D. Nev. Apr. 5, 2016) ("Court dismisses Plaintiff's specific performance claim as an independent cause of action and considers it a form of relief for its breach of contract claim"); *Travelers Indem. Co. v. Burnett*, No. CV1204373GAFRNBX, 2012 WL 12892302, at *3 n.3 (C.D. Cal. Oct. 25, 2012) ("Though the Complaint and Motion for Summary Judgment are formatted as though 'Specific Performance' were a separate cause of action, the Court assumes that Plaintiff is requesting the remedy of specific performance as an alternative to its request for damages resulting from the alleged breach of the GAI").

**2. Legal Standard**

The availability of the remedy of specific performance requires: "[a] showing by plaintiff of (1) the inadequacy of his legal remedy; (2) an underlying contract that is both reasonable and supported by adequate consideration; (3) the existence of a mutuality of remedies; (4) contractual terms which are sufficiently definite to enable the court to know what it is to enforce; and (5) a substantial similarity of the requested performance to that promised in the contract." *Tamarind Lithography Workshop, Inc. v. Sanders*, 143 Cal. App. 3d 571, 575 (1983).

Sureties are ordinarily entitled to specific performance of collateral security clauses. *Safeco Ins. Co. of Am. v. Schwab*, 739 F.2d 431, 433 (9th Cir. 1984). "A damages remedy would be inadequate because '[i]f a creditor is to have the security position for which he bargained, the promise to maintain the security must be specifically enforced.' " *Hartford Fire Ins. Co. v. Atek Constr., Inc.*, No. SACV 04-1316 DOC (ANX), 2005 WL 8252834, at *6 (C.D. Cal. May 16, 2005) (quoting *Schwab*, 739 F.2d at 433); *see also Travelers Cas. & Sur. Co. of Am. v. W.P. Rowland Constructors Corp.*, No. CV-12-0390-PHX-FJM, 2013 WL 2285204, at *4 (D. Ariz. May 22, 2013) (citing *Milwaukie Constr. Co. v. Glens Falls Ins. Co.*, 367 F.2d 964, 966 (9th Cir. 1966) ("where [a surety knows it will] have liability claims filed against it but [does] not know the amount of those claims, the legal remedy of money damages [is] not adequate")).

California courts have specifically enforced collateral security provisions and have even authorized prejudgment attachments in suits for specific performance of collateral

security provisions. *See Gen. Ins. Co. v. Howard Hampton, Inc.*, 185 Cal. App. 2d 426 (1960); *Gen. Ins. Co. v. Singleton*, 40 Cal. App. 3d 439, 442 (1974).

**3. Defendants' Failure to Specifically Perform**

Liberty seeks judgment for specific performance of Defendants' collateral deposit obligation under the GAI. (ECF No. 39-1 at 19:9–21:8.) It is undisputed that GAI signatories (here, Defendants) agreed to deliver security to collateralize Coffman Inc.'s obligations in the event that the "Surety" (here, Liberty) faced liability on bonds issued on behalf of Coffman Inc.'s projects (here, the Performance Bond and the Payment Bond).

The following GAI clauses create Defendants' collateral deposit obligation:

1. A collateral clause obligating payment of collateral sufficient to discharge or cover claims against the Surety (here, Liberty) (ECF No. 39-3, Ex. A, "Indemnity to Surety" clause ¶ 2);
2. A discharge clause obligating procurement of discharge from any bond and all related liability, or in the alternative, the deposit of acceptable collateral to cover all exposure under the bond(s) (*Id.*, "General Provisions" clause ¶ 5).

Under the terms of the GAI, Liberty asserts it is permitted to request such collateral from Defendants after: (1) it has requested a discharge of liability under any bond issued on behalf of Coffman Inc.; and (2) such discharge is not obtained. (ECF No. 39-1 at 15:18–24.) The Court agrees.

It is undisputed that Liberty has sent letters to Defendants requesting them to obtain complete discharge of liability from the claims brought by C202 in the Arizona litigation (ECF No. 39-2 ¶¶ 36, 37; ECF No. 39-20, Exs. S (March 3, 2025 letter demanding $6.5 million in collateral) and T (March 5, 2025 letter to Defendants demanding collateral "or, in the alternative, that Defendants 'obtain the complete discharge of Liberty Mutual from the claims brought by C202 and all liability therefrom.' ")). It is also undisputed that Defendants have not paid any collateral.

Given the ongoing Arizona litigation, the Court agrees with Liberty that it "cannot be made whole by recovering only those money damages incurred to date" and Liberty

"remains exposed to unliquidated liability because of having issued the Performance Bond on behalf of Coffman [Inc.]." (ECF No. 39-1 at 21:2–6.) Thus, Liberty has presented sufficient evidence regarding Defendants' contractual obligations and the inadequacy of the legal remedy of monetary damages to meet Liberty's initial burden to move for summary judgment. *Milwaukie Constr. Co.*, 367 F.2d at 966.

In response, Defendants do not contest their contractual obligation to provide security under the GAI. Instead, Defendants argue that Liberty lacks standing to enforce the collateral clauses and that Coffman Inc. is in the process of obtaining a supersedeas bond, which would "stay execution on the [Arizona] judgment against Coffman [Inc.] and [Liberty] during the appeal." (ECF No. 54 at 8:24–26.) Since Liberty qualifies as a "Surety" pursuant to the reasoning *supra* § III.B.2, the Court finds Defendants have failed to raise triable issues that Liberty has standing under the GAI.

Next, Defendants argue that requiring them to post collateral "will make Coffman [Inc.]'s efforts to obtain a supersedeas bond to stay enforcement of the Arizona judgment for [Liberty] and Coffman [Inc.] more difficult." (ECF No. 54-2 ¶ 9.) Though this could make efforts to continue to stay the Arizona action more challenging in the future, at this time, the Arizona court has already stayed enforcement of the Arizona judgment on the condition that Defendants procure, submit, and obtain court approval for a supersedeas bond. (ECF No. 64.)

Further, Defendants contend the Arizona court's ruling on the post-judgment motions in the Arizona case could increase, reduce, or even eliminate the Arizona court's judgment for damages against Coffman Inc. and Liberty. (*Id.* at 7; ECF No. 60-1 ¶ 14.) As a matter of law, "a surety cannot request collateral if the underlying claim is patently frivolous." *Phila. Indem. Ins. Co. v. Ohana Control Sys., Inc.*, 450 F. Supp. 3d 1043, 1055 (D. Haw. 2020). However, "[i]t is not enough that the claim is *unlikely* to succeed . . . Defendants must show that 'recovery in the amount demanded is definitively barred.' " *Id.* (emphasis in original). Defendants do not argue that enforcement of the Arizona court's judgment is "definitively barred," *id.*, and thus, fail to adequately address how the stay or

appeal of the Arizona court's judgment undermines Liberty's right to specifically enforce the collateral security provision of the GAI.

In addition, at oral argument (ECF No. 64) and in Defendants' opposition (ECF No. 54 at 8:8–21), Defendants also raised the issue that there can be no "irreparable harm" to Liberty because Defendants have already obtained court approval to post collateral in the Arizona court action—and C202 would likely draw money from the collateral fund rather than seek damages against Liberty directly. (ECF No. 64.) However, California courts have held "[t]he concept of irreparable injury is more suitable in a discussion of injunctive relief than specific performance . . . [i]t has been said that the term adds nothing to the concept of inadequacy of the legal remedy." *Ellison v. Ventura Port Dist.*, 80 Cal. App. 3d 574, 580 (1978) (citing 2 Witkin, California Procedure (2d ed. 1970) Provisional Remedies, § 51, pp. 1499–1500). Liberty seeks specific performance, not injunctive relief, here.

Based on the above, the Court finds Defendants have failed to raise any triable issues that Liberty is entitled to the remedy of specific performance under the GAI for Defendants' default under the GAI.

#### 4. Liberty's Requested Monetary Amount for Specific Performance

Liberty seeks judgment in the amount of $12,461,308.40 for specific performance of Defendants' collateral deposit obligation under the GAI. (ECF No. 39-1 at 19:9–21:8.)

Liberty asserts the collateral clause and the discharge clause grant Liberty the right to set the collateral amount. (*See, e.g.,* ECF No. 39-1 at 14:15–16 ("The express terms of the [GAI] require[] Defendants to . . . post collateral in an amount determined by [Liberty] to be sufficient to cover anticipated exposure under such bonds").) The collateral clause requires payment of "[a]n amount sufficient to discharge any claim made against [Liberty] on any Bond," with the sum being "the minimum amount of any reserve set by [Liberty]." (ECF No. 39-3, Ex. A, "Indemnity to Surety" clause ¶ 2.) The discharge clause requires payment "on request of [Liberty] [to] procure the discharge of [Liberty] from any Bond and any liability by reason thereof," or, if that is unattainable, to "deposit collateral with

[Liberty], acceptable to [Liberty], sufficient to cover all exposure . . . or make provisions acceptable to [Liberty] for the funding of the bonded obligations." (*Id.*, "General Provisions" clause ¶ 5 (emphasis added).)

However, Liberty's ability to "set" the amount of collateral is qualified by the contractual language itself—stating Liberty may only request the amount "sufficient" to "cover anticipated exposure" or to "discharge any claim." (ECF No. 39-3, Ex. A, "Indemnity to Surety" clause ¶ 2.)

Liberty is constrained by the implied covenant of good faith and fair dealing, which inheres in all contracts, to set a reasonable amount of collateral. *See Hartford Fire Ins. Co.*, 2005 WL 8252834, at *5 (quoting *Cal. Lettuce Growers v. Union Sugar Co.*, 45 Cal. 2d 474, 484 (1955)) (applying the implied covenant of good faith to parties' contract giving the surety the right to set the "necessary" amount of collateral: "[W]here a contract confers on one party a discretionary power affecting the rights of the other, a duty is imposed to exercise that discretion in good faith and in accordance with fair dealing"). Importantly, "a demand made on a collateral security provision will always have some element of uncertainty . . . This element of uncertainty does not turn any collateral security demand into a bad-faith determination made on a whim." *Hartford Fire Ins. Co.*, 2005 WL 8252834, at *5. "Commercially reasonable sales are presumed to be in good faith." *Sec. Pac. Nat'l Bank v. Geernaert*, 199 Cal. App. 3d 1425, 1431 (1988), *opinion modified on denial of reh'g* (May 4, 1988). "Specific performance is the proper remedy" for breach of the implied covenant of good faith and fair dealing. *Hartford Fire Ins. Co.*, 2005 WL 8252834, at *6.

California courts have held that although "a disposition of collateral approved in any judicial proceeding 'shall conclusively be deemed to be commercially reasonable,' " plaintiffs must still "make a proper accounting" as to the amount of proceeds they are entitled to. *Sec. Pac. Nat'l Bank*, 199 Cal. App. 3d at 1433.

Here, Liberty derives the total figure of $12,461,308.40 (ECF No. 39-1 at 19:9–21:8) from: (1) $5,611,713 awarded to C202 in a post-trial under-advisement ruling in the

Arizona litigation against Coffman Inc. on July 8, 2025 (ECF No. 39-20, Ex. Q); (2) an application for fees, costs, and Rule 68(g) sanctions ($3,849,595.39)[2] (ECF No. 39-20, Ex. R); and (3) anticipated prejudgment interest ($3,000,000) based on C202's requested interest accrual date (ECF No. 39-2 ¶ 47).

Given that the under-advisement ruling is a disposition in a judicial proceeding (*see* ECF No. 39-20, Ex. Q), the amount awarded there is "commercially reasonable." *Sec. Pac. Nat'l Bank*, 199 Cal. App. 3d at 1433. Further, regarding the collateral sought by C202 against Coffman Inc. (and against Liberty jointly and severally) for fees, costs, Rule 68(g) sanctions, and prejudgment interest, Liberty may seek collateral even where it "only anticipates a loss[.]" *Allied World Specialty Ins. Co. v. JND Thomas Co.*, 2015 WL 9480626, at *5 (E.D. Cal. Dec. 29, 2015).

Defendants' sur-reply asserts that Defendants have applied for an $11.9 million supersedeas bond from Berkshire Hathaway Specialty Insurance in the Arizona litigation since Liberty filed its Motion. (ECF No. 60.) Once approved by the Arizona court, the supersedeas bond stays C202's enforcement of any monetary judgment in the Arizona litigation until after Defendants' appeal of the final judgment has concluded. *See* Ariz. R. Civ. App. P. 7. Though Defendants represented at oral argument that the Arizona court has already stayed enforcement of its judgment awarding damages on the condition that the bond would be accepted, Liberty represented (and Defendants did not dispute) that the Arizona court has not yet accepted the bond. (ECF No. 64.) Liberty raised the point that should the Arizona court reject the bond, the judgment against Liberty would be once again enforceable by C202. (*Id.*) Thus, Defendants' supersedeas bond application does not meaningfully affect the calculus of the appropriate amount of collateral sought, and Defendants fail to raise triable issues. *Phila. Indem. Ins. Co.*, 450 F. Supp. 3d at 1055 ("Defendants must show that 'recovery in the amount demanded is definitively barred.' ").

---

[2] Since the total sums up to $12,461,308.<u>39</u>, rather than $12,461,308.<u>40</u>, the Court proceeds in evaluating whether $12,461,308.<u>39</u> is an appropriate amount of collateral.

* * *

For the reasons above, the Court **GRANTS** Liberty's Motion for an award of $12,461,308.39 in collateral for Defendants' failure to specifically perform under the GAI (Count 3). (ECF No. 39.)

## IV. CONCLUSION

For the reasons above, the Court **GRANTS IN PART** and **DENIES IN PART** Liberty's Motion. (ECF No. 39.)

More specifically:

1. The Court **GRANTS IN PART** and **DENIES IN PART** Liberty's Motion on Count 1 (Breach of Contract). (ECF No. 39.) While the Court **GRANTS** Liberty's Motion that Defendants prima facie breached the GAI, that Liberty is entitled to $244,280.93 in attorneys' fees and $15,594.49 in consultant fees for that breach, and that Liberty is entitled to indemnification for its travel costs, the Court **DENIES** Liberty's Motion as to the exact monetary amount recoverable for those travel costs. (ECF No. 39.)
2. The Court **GRANTS** Liberty's Motion on Count 3 (Specific Performance), construed as a request for the remedy of specific performance for breach of the GAI. (ECF No. 39.) Defendants are **ORDERED** to provide Liberty collateral in the amount of $12,461,308.39 to cover Liberty's financial exposure by **September 24, 2026**. Liberty shall not disburse the demanded funds until further order of the Court.

**IT IS SO ORDERED.**

**DATED: August 24, 2026**

**Hon. Cynthia Bashant, Chief Judge**
**United States District Court**